Wilderness Industries of Maryland, Inc., Petitioner v. Commonwealth of Pennsylvania, State Board of Motor Vehicle Manufacturers, Dealers and Salesmen and Dean Fountain Camper Sales, Respondents.

Argued February 6, 1981, before Judges ROGERS, CRAIG and PALLADINO, sitting as a panel of three.

*David R. Bahl, McCormick, Reeder, Nicholas, Sarno, Bahl & Knecht,* for petitioner.

*Marjorree Aderson,* Assistant Attorney General, with her *James J. Kutz,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondent, State Board of Motor Vehicle Manufacturers, Dealers and Salesmen.

*Clarence D. Bell, Jr.,* for respondent, Dean Fountain Camper Sales.

OPINION BY JUDGE PALLADINO, March 30, 1981:

This is an appeal from an order of the State Board of Motor Vehicle Manufacturers, Dealers and Salesmen (Board) dated February 27, 1980, which suspended the

motor vehicle manufacturer's license of Wilderness Industries of Maryland, Inc. (petitioner). The basis for the suspension was a conclusion by the Board that petitioner had violated Section 4(2)(xi) of the Motor Vehicle Manufacturer's, Dealer's and Salesmen's License Act (Act), Act of December 21, 1973, P.L. 412, 63 P.S. §805(2)(xi), *reenacting and amending* Section 5 of the Motor Vehicle Salesmen's License Act, Act of September 9, 1965, P.L. 499, *as amended*, 63 P.S. §805, which requires 60 days advance notice by a motor vehicle manufacturer of the intention to cancel the franchise of any motor vehicle dealer.[1] We affirm.

The initial proceeding was brought before the Board on the complaint of Dean Fountain Camper Sales (Dean Fountain), which objected to the cancellation of its dealership franchise by petitioner.

The Board, *inter alia*, made the following findings of fact:

6. On or about August 1, 1974, [petitioner] and [Dean Fountain] agreed to designate [Dean Fountain] a mobile home

---

[1] Section 4(2)(xi) of the Act, 63 P.S. §805(2)(xi) provides in pertinent part as follows:

*Not less than sixty days advance notice of such termination, cancellation or failure to renew shall be given the dealer prior to the effective date thereof unless the nature or character of the reason for termination, cancellation or failure to renew is such that the giving of such notice would not be in the public interest.* At any time before the effective date of such termination, cancellation or failure to renew, the dealer may appeal to the board for a hearing on the merits, and following due notice to all parties concerned, such hearing shall be promptly held. No such termination, cancellation or failure to renew shall become effective until final determination of the issue by the board. In the event of a dealer appeal, the burden of proof shall be on the manufacturer to show that such termination, cancellation or failure to renew was for good cause and in good faith. (Emphasis added.)

dealer authorized to sell the [petitioner's] products. Thereafter, [Dean Fountain] immediately began the sale of [petitioner's] mobile homes....

7. On or about May 7, 1975, [Dean Fountain] submitted to the [petitioner] a dealership application and financial statement....

8. Neither [Dean Fountain] or [petitioner] executed a written document setting forth the terms or obligations for possessing and operating a dealership authorized to merchandise the [petitioner's] product....

12. On March 25, 1977, [petitioner] issued a letter to [Dean Fountain] indicating that [Dean Fountain] was placed on probation for the following reasons:

'1. Failure to adequately inventory the Wilderness Travel Trailer. You now have only five new Wilderness Travel Trailers in stock.

'2. Very poor market penetration in your area, only 6.7% in Delaware County for 1976, whereas Prowler, our nearest competition, has over 21% in the same county. Reference R. L. Polk.

'3. The low interest you display in keeping your dealership with Wilderness.'

The letter also informed [Dean Fountain] that a discussion involving the probable severing of [Dean Fountain's] dealership/manufacturer relationship would be pursued if he did not boost the dealership's stock by April 25, 1977....

14. On December 16, 1977, [petitioner] issued to [Dean Fountain] a letter immediately terminating the dealer/manufacturer's relationship. The reasons for termination are as follows:

'1. Failure to adequately inventory the Wilderness Travel Trailers. You have not inven-

toried the required minimum inventory and you now have only three new Wilderness Trailers in stock which is not a representative stock of our line.

'2. The low interest you still display in keeping your dealership with Wilderness.' ...

Based on the above findings, the Board concluded as a matter of law that the probation letter of March 25, 1977 did not constitute adequate notice of petitioner's intent to terminate a franchise as required by Section 4(2)(xi) of the Act and that therefore petitioner's termination letter of December 16, 1977, amounted to a termination without prior notification in violation of the Act.

Petitioner first argues that the Board lacked jurisdiction to act in this case because no franchise existed between petitioner and the motor vehicle dealer, Dean Fountain. This contention is based on the language in Section 4(2)(xi) which requires 60 days advance notice before a manufacturer can cancel "the franchise of any distributor." Petitioner maintains that the relationship was merely contractual in nature and not equivalent to a franchise since no written document establishing the right and obligations of the parties was ever executed and petitioner exercised only minimal control over Dean Fountain's business. We disagree.

The Pennsylvania Supreme Court has defined a franchise relationship in the following manner:

In its simplest terms, a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under the name or mark. More broadly stated, the franchise has evolved into an elaborate agreement by which the franchisee undertakes to conduct a business or sell a product or service in accordance with methods and pro-

cedures prescribed by the franchisor, and the franchisor undertakes to assist the franchisee through advertising, promotion and other advisory services.

*Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 374, 390 A.2d 736, 740 (1978) (quoting *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 508-09, 351 A.2d 207, 211 (1976)).[2]

In *Witmer v. Exxon Corp.*, 260 Pa. Superior Ct. 537, 394 A.2d 1276 (1978), the Superior Court analyzed the definition of franchise set out in *Razumic* and concluded that the lack of a written agreement did not necessarily prevent a business relationship from being termed a franchise. Rather, the Superior Court found the actual business practices of the parties and the degree of control exercised by one party over the other party's business to be the cornerstones of a franchise relationship.

We must agree with the Superior Court that under the standards set out in *Razumic*, a franchise relationship may be found to exist even in the absence of a written agreement to that effect so long as the evidence shows that the business conduct of those involved conforms in actual practice to that of a franchise relationship.

Despite the absence of a written franchise agreement, it is clear from the record below that the actual business practices between petitioner and Dean Fountain evidence all the essential components of a franchise relationship. Accordingly, we see no merit to petitioner's argument that in the absence of a formal written agreement no franchise relationship could exist for purposes of the Act.

---

[2] In view of the detailed definition of a franchise relationship set out by the Supreme Court in *Razumic, supra*, we reject petitioner's argument that the Act is unconstitutionally vague because it fails to define the term "franchise."

Petitioner's other argument worthy of note is that it has complied in substance, though not in strict form, with the 60 day advance notice of termination required by the Act. Specifically, petitioner argues that its letter of March 25, 1977, placing Dean Fountain on probation and threatening termination at an unspecified later date, satisfies the notice requirement. This argument is also unpersuasive.

Section 4(2)(xi) is quite explicit that advance notice of termination must be given unless "such notice would not be in the public interest." Petitioner has not alleged that advance notice would not have been in the public interest in this case. Further, it is clear that the letter of March 25, 1977, did not amount to advance notice of termination because it merely warned of the possibility of termination in the future if certain conditions were not complied with by April 25, 1977. Where, as here, the words of a statute are clear and unambiguous, we are not empowered to disregard the letter of the statute under the pretext of pursuing its spirit. Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b). Rather, the statute must be given its plain and obvious meaning. *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965); *City of Pittsburgh v. Royston Service, Inc.*, 37 Pa. Commonwealth Ct. 394, 390 A.2d 896 (1978). We conclude, therefore, that petitioner has not given proper notice of termination as required by Section 4(2)(xi) of the Act.

Accordingly, the order of the Board suspending petitioner's manufacturer's license is affirmed to the extent outlined in the foregoing opinion.[3]

---

[3] In addition to finding that petitioner had not given proper advance notice of its intention to terminate a dealership franchise, the Board also concluded that the termination was not "for good cause and in good faith," an additional requirement of Section 4(2)(xi) of the Act. However, because an improper notice of ter-

ORDER

AND NOW, March 30, 1981, the order of the State Board of Motor Vehicle Manufacturers, Dealers and Salesmen, dated February 27, 1980, docketed at No. 78-MV-21, is affirmed insofar as it suspends petitioner's manufacturer's license for failure to provide proper notice of termination of the dealership franchise of Dean Fountain Camper Sales.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.

---

mination is, in and of itself, a sufficient reason for suspending petitioner's license, we see no need to consider whether or not the termination of the dealership franchise was "for good cause and in good faith."