Robert C. CRYAN (EA MEDIA),
Appellants

v.

SNYDER COUNTY BOARD OF AS-
SESSMENT APPEALS, Snyder Coun-
ty, Spring Township and Midd–West
School District.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2011.

Decided Oct. 13, 2011.

Robert H. Steinberg, Middleburg, for appellants.

Robert Michael Cravitz, Selinsgrove, for appellees Snyder County Board of Assessment Appeals and Snyder County.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Robert C. Cryan (EA Media) (hereinafter collectively referred to as "Cryan/EA Media") appeals from an order of the Court of Common Pleas of the Seventeenth Judicial District, Snyder County Branch (trial court) granting in part and denying in part Cryan/EA Media's motion for post-trial relief.[1] We affirm in part and vacate in part.

The following two issues presented in this appeal are ones of first impression:

1. Whether the trial court erred in affirming the decision of the Snyder County Board of Assessment Appeals (Board) that does not allow an exemption from taxation for EA Media's wind energy generating tower and equipment as provided for pursuant to Section 201(a.1) of The Fourth to Eighth County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.201(a.1);[2] and

2. Whether the trial court erred in holding that the Board may charge a fee for an assessment appeal.

The parties stipulated to the following facts. Cryan owns agricultural real property situated on Shade Mountain Road, Beaver Springs, Pennsylvania 17842, which is also known as 643 Mount Pisgah Alter Road, Beaver Springs, Pennsylvania 17842 (Property). Cryan had owned the Property with his wife, Doris Cryan, who is now deceased. Cryan and his wife entered into a lease agreement with EA Media which constructed a 190 foot internet providing tower on the Property. A wind generation device is affixed to the internet tower.

The wind generation device supplies electricity for the operation of the tower's internet provider service. There is no connection to the electrical power grid from the tower and no electricity is sold on the electrical power grid as a result of the wind generation device or tower.

---

1. Midd–West School District filed a notice of non-participation with this Court on May 18, 2011. By order of this Court filed June 13, 2011, Spring Township was precluded from filing a brief or participating in oral argument in this appeal.

2. Section 6(1)(ii) of the Act of October 27, 2010, P.L. 895, repealed The Fourth to Eighth County Assessment Law, effective January 1, 2011. The Fourth to Eighth County Assessment Law was replaced by the Consolidated County Assessment Law, 53 Pa.C.S. §§ 8801–8868, effective January 1, 2011. The provisions set forth in Section 201(a.1) of the repealed Fourth to Eighth County Assessment Law can now be found in Section 8811(b)(5) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8811(b)(5). Because this matter arose prior to January 1, 2011, it is governed by Section 201(a.1) of the repealed Fourth to Eighth County Assessment Law.

Cryan/EA Media paid approximately $8,400 for the materials involved in the construction of the tower. Cryan/EA Media paid approximately $495 for the wind generation device installed on the tower.

On June 20, 2007, the Board issued a notice of assessment change to Cryan as record owner of the Property. On August 28, 2009, Cryan and EA Media, as lessee, filed an appeal of the Board's assessment. The Board charges a processing fee of $75 for commercial property assessment appeals and $10 for residential property assessment appeals. EA Media paid a $75 fee for the appeal.

On October 8, 2009, a hearing was held on the appeal and by decision of October 12, 2009, the Board reduced the assessment amount and notified Cryan/EA Media via mail. On November 4, 2009, Cryan/EA Media filed a petition for appeal with the trial court to which the Board filed a response on December 3, 2009.

After discovery, the parties filed a stipulation of facts with the trial court on November 1, 2010. A hearing was held before the trial court on November 4, 2010, and the parties submitted briefs. The parties agree that the proper assessed value of the improved portion of the Property is $2,130.

By order of December 22, 2010, the trial court affirmed the Board's assessment of the Property; however, the trial court mistakenly stated that the agreed upon assessed value of the Property was $2,300. In affirming the Board's assessment, the trial court found that "[t]he sole purpose of the tower located on the Property in question is as a communications device—to provide internet service—and not as a wind energy generation device." Trial Court Op. at 6.

With respect to the Board's authority to charge a fee for an assessment appeal, the trial court concluded that the general authority granted in Section 508 of The Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. § 3508,[3] permitted the Snyder County Board of Commissioners to implement a fee for the processing of assessment appeals. The trial court found that the Commissioners approved a fee schedule that included the fee for the processing of assessment appeals, which fee is received and collected by the County Chief Tax Assessor and deposited into the Snyder County Treasury pursuant to Section 1601 of The County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1601. Section 1601 specifies that all fees received by a county officer legally authorized to charge or receive the fee belong to the county. The trial court concluded that the assessment and taxation of real property are certainly affairs of the county. Accordingly, the trial court approved the $75 assessment appeal fee charged to EA Media as lawfully imposed.

On January 4, 2011, after consideration of Cryan/EA Media's motion for post-trial relief, the trial court entered an order correcting the assessed value of the Property and denying the motion in all other respects. This appeal followed.[4]

---

3. Section 508 governs ordinances and resolutions and provides, in pertinent part, as follows:

    (a) The board of commissioners may adopt resolutions and ordinances prescribing the manner in which powers of the county shall be carried out and generally regulating the affairs of the county.

4. This Court's scope of review of an order of a trial court denying a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc. v. Pennsylvania Department of Transportation,* 163 Pa.Cmwlth. 251, 641 A.2d 11, *petition for allowance of appeal denied,* 539 Pa. 657, 651

In support of the first issue raised herein, Cryan/EA Media argues that there is no question that it erected a tower with a wind energy turbine, tower and tower foundations. Cryan/EA Media contends that there is no provision in Section 201 of the Assessment Law, 72 P.S. § 5453.201, that states that the tower or equipment must be used exclusively for wind energy generation. Cryan/EA Media contend further that the Assessment Law also does not require that the energy generated must be connected to and feed power back into the energy grid. Cryan/EA Media argues that the tower at issue herein serves a dual purpose—to provide energy to the batteries and equipment and to power the internet communications service. The latter would not be possible without the former. Thus, if the tower is considered assessable real property, it is serving the legislative purpose of generating electricity through wind power. Cryan/EA Media argues that this Court is bound by the plain language of the statute.

In response, the Board argues that Cryan/EA Media's tower is not a wind turbine generation device within the meaning of the statute as its purpose is not to generate wind energy. The Board asserts that Cryan/EA Media should not be able to avoid a tax assessment because a small turbine has been attached to the internet tower on the real property that it rents. It is clear that the statutory language was only meant for structures whose function is to generate wind power.

The Board points out further that Cryan/EA Media's assertion that the internet tower serves a dual purpose "to power and provide energy to the batteries and equipment and to power the internet com-

munication service" is not supported by the record. The Board contends that Cryan/EA Media stipulated to the facts, particularly number 7, which states: "The wind generation device supplies electricity for the operation of the tower's internet provider service." *See* Stipulation of Facts, Reproduced Record (R.R.) at R19. The Board argues that no mention was made of any batteries or power generation beyond what is required to operate the internet tower. The Board contends therefore that the primary purpose of the internet tower is not to generate wind energy.

Section 1921(b) of the Statutory Construction Act of 1972 provides that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Department of Transportation, Bureau of Driver Licensing v. Empfield,* 526 Pa. 220, 224, 585 A.2d 442, 444 (1991). "When the language of a statute is clear and unambiguous, the Judiciary must read its provisions in accordance with their plain meaning and common usage." *Id.* at 225, 585 A.2d at 444 (citing Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a); *Commonwealth v. Bell,* 512 Pa. 334, 339, 516 A.2d 1172, 1175 (1986); *In re: Estate of Baker,* 496 Pa. 577, 437 A.2d 1191 (1981); *Commonwealth v. Simione,* 447 Pa. 473, 291 A.2d 764 (1972); *In Re: Stegmaier Estate,* 424 Pa. 4, 225 A.2d 566 (1967); *Commonwealth v. Rieck Investment Corporation,* 419 Pa. 52, 213 A.2d 277 (1965); *Southwest Delaware County Municipal Authority v. Aston Township,* 413 Pa. 526, 198 A.2d 867 (1964)). The statute must be given its

A.2d 543 (1994). Our "scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or made findings unsupported by substantial evidence." *Benedictine Sisters of Pittsburgh v. Fayette County Board of Assessment Appeals,* 844 A.2d 86, 88 n. 3 (Pa.Cmwlth.2004).

plain and obvious meaning. *Wilderness Industries of Maryland, Inc. v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen,* 58 Pa.Cmwlth. 127, 427 A.2d 1235 (1981).

Section 201(a.1) of the Assessment Law applicable herein provides, in pertinent part, as follows:

(a.1) ... No wind turbine generated generators or related wind energy appliances and equipment, including towers and tower foundations, shall be considered or included as part of the real property in determining the fair market value and assessment of real property used for the purpose of wind energy generation....

72 P.S. § 5453.201(a.1). Applying the foregoing principles of statutory construction to Section 201(a.1), this Court concludes that the language of the statute is clear and unambiguous. The plain and obvious meaning of the statutory language is that if real property is *used for the purpose of wind energy generation* then a wind turbine generated generator or related wind energy appliances and equipment, including towers and tower foundations, shall not be considered or included as part of that real property in determining the assessed value.

▆▆▆ Herein, the trial court specifically found that "[t]he sole purpose of the tower located on the Property in question is as a communications device—to provide

internet service—and not as a wind energy generation device." [5] Trial Court Op. at 6. The trial court pointed out that "[t]he wind turbine associated with the tower is designed to provide electricity limited to the operation of the tower as an internet service provider. It has no connection to the power grid, and its generation of electricity is confined to the single tower to which it is attached." *Id.*

We can discern no error in the trial court's findings and conclusions based on the stipulated facts. *See* R.R. at R18–R19. No ordinary person would consider that the Property at issue in this matter is being used for the purpose of wind energy generation.[6] EA Media's tower is admittedly used for the sole purpose of providing internet service and that the wind generation device attached thereto supplies electricity solely for the operation of the tower's internet provider service. *Id.* at R19.

Next, Cryan/EA Media argues that there is no authority for the Board to charge a fee for an assessment appeal. Cryan/EA Media contends that because there is no authority, the charging of a fee is illegal and therefore a violation of due process.

In response, the Board contends that the assessment appeal fee is proper because no prohibition exists which would invalidate the practice of charging a processing fee for tax assessment appeals.

---

**5.** "The trial court's findings of fact can be reversed only for clear error." *Herzog v. McKean County Board of Assessment Appeals,* 14 A.3d 193, 200 (Pa.Cmwlth.2011) (citing *Green v. Schuylkill County Board of Assessment Appeals,* 565 Pa. 185, 196–97, 772 A.2d 419, 427 (2001)). "Where the trial court's conclusions are supported by substantial evidence in the record, this Court may not disturb those findings on appeal." *Herzog,* 14 A.3d at 200 (citing *Earl Township v. Reading Broadcasting, Inc.,* 770 A.2d 794, 798 (Pa. Cmwlth.2001)).

**6.** *See Cellco Partnership v. Lycoming County Board of Assessment,* 934 A.2d 779, 782 (Pa. Cmwlth.2007) (Commonwealth Court held that trial court did not err in applying the "ordinary man" test to conclude that the communications towers at issue in the tax assessment appeal were "neither part of an industrial establishment nor part of any manufacturing process.").

The Board argues that all other county agencies charge fees for filing, that the fee was approved by the Snyder County Board of Commissioners, and that the fee is not excessive nor does it deprive EA Media of its due process rights.

■■■■ Upon review, we conclude that the trial court lacked jurisdiction to consider whether the imposition of the $75 assessment appeal fee was lawful.[7] The right to appeal a tax assessment of personal or real property to either the county tax assessment board or the court of common pleas is by virtue of an express statutory grant.[8] Section 701 of the Assessment Law[9] provides persons aggrieved by a personal or property assessment with the

7. This Court may address jurisdictional issues *sua sponte. Joe Darrah, Inc. v. Zoning Hearing Board*, 928 A.2d 443 (Pa.Cmwlth.2007).

8. Where the right to appeal is statutory, the statutory provisions that grant the right of appeal go to the jurisdiction of the court and its competency to act. *King Productions, Inc. v. Board of Adjustment*, 27 Pa.Cmwlth. 256, 367 A.2d 322 (1976).

9. 72 P.S. § 5453.701. Section 701 provides of the Assessment Law provides as follows:

(a) The board shall meet for the hearing of appeals and shall continue to meet for such purpose from time to time, until all appeals have been heard and acted upon. All appeals other than appeals brought under section 701(a.1) shall be acted upon not later than the last day of October. When an appeal has been filed, the board shall notify each person and each taxing district having an interest therein, of the time and place where he shall appear for the purpose of being heard, by depositing such notice in the mail, addressed to such person at the address designated in the statement of intention to appeal, not later than the twentieth day preceding the day designated in the notice for such appearance. All hearings on appeals before the board shall be open to the public and shall be conducted in accordance with regulations prescribed by the board. Any person may appear and be heard, either in person or by counsel. Any political subdivision having an interest in the assessment may appear and be heard, either by its solicitor or counsel specially engaged for such purpose.
(b) In any appeal of an assessment the board shall make the following determinations:
(1) The market value as of the date such appeal was filed before the board.
(2) The common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed to the board.
(c) The board, after determining the market value of the property, shall then apply the established predetermined ratio to such value unless the common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed to the board varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the board shall apply that same common level ratio to the market value of the property.
(c.1) When a county has effected a countywide revision of the assessment which was used to develop the common level ratio last determined by the State Tax Equalization Board, the following shall apply:
(1) If a county changes its assessment base by applying a change in predetermined ratio, the board shall apply the percentage change between the existing predetermined ratio and newly established predetermined ratio to the county's common level ratio to establish the certified revised common level ratio for the year in which the assessment was revised.
(2) If the county performs a countywide revision of assessments by revaluing the properties and applying an established predetermined ratio, the board shall utilize the established predetermined ratio instead of the common level ratio for the year in which the assessment was revised and until such time as the common level ratio determined by the State Tax Equalization Board reflects the revaluing of properties resulting from the revision of assessments.
(d) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.
(d.1) Persons who have suffered catastrophic losses to their property shall have the right to appeal before the county board

right to appeal to the county board of assessment. Section 704 of the Assessment Law [10] bestows jurisdiction upon the

of assessment appeals within the remainder of the county fiscal year in which the catastrophic loss occurred, or within six months of the date on which the catastrophic loss occurred, whichever time period is longer. The duty of the county board of assessment appeals shall be to reassess the value of the property in the following manner: the value of the property before the catastrophic loss, based on the percentage of the taxable year for which the property stood at its former value, shall be added to the value of the property after the catastrophic loss, based on the percentage of the taxable year for which the property stood at its reduced value. Any property improvements made subsequent to the catastrophic loss in the same tax year shall not be included in the reassessment described in this subsection for that tax year. Any adjustments in assessment under this subsection:

(1) shall be reflected by the appropriate taxing authorities in the form of a credit for the succeeding tax year; or

(2) upon application by the property owner to the appropriate taxing authorities, shall result in a refund being paid to the property owner at the time of issuance of the tax notice for the next succeeding tax year by the respective taxing authorities. As used in this section, "catastrophic loss" means any loss due to mine subsidence, fire, flood or other natural disaster which affects the physical state of the real property and which exceeds fifty per centum (50%) of the market value of the real property prior to the loss.

(e) The order of the board shall be entered in the minutes of the board, and a copy of such order shall be delivered to the person who appealed, either in person or by mail, to the address shown in the statement of intention to appeal, within five days after the hearing on such appeal. The chief assessor and such assistant assessors as he or the board may designate, shall attend each hearing and shall furnish the board with such information relating to the assessment appealed from, as the board may desire. Either the board or the person appealing may call such witnesses as they desire and as may be permitted under the rules of the board, and the board may examine such witnesses under oath. For the purpose of examining witnesses, any member of the board shall be competent to administer oaths.

The provisions of Section 701 of the repealed Assessment Law are found in Section 8844 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8844.

10. 72 P.S. § 5453.704. Section 704 of the Assessment Law provides as follows:

(a) Any person who shall have appealed to the board for relief from any assessment, who may feel aggrieved by the order of the board in relation to such assessment, may appeal from the order of the board to the court and thereupon the court shall proceed at the earliest convenient time to be by them appointed, of which notice shall be given to the board to hear the said appeal and the proofs in the case, and to make such orders and decrees determining from the evidence submitted at the hearing.

(b) In any appeal of an assessment the court shall make the following determinations:

(1) The market value as of the date such appeal was filed before the board of assessment appeals. In the event subsequent years have been made a part of the appeal, the court shall determine the respective market value for each such year.

(2) The common level ratio which was applicable in the original appeal to the board. In the event subsequent years have been made a part of the appeal, the court shall determine the respective common level ratio for each such year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

(c) The court, after determining the market value of the property pursuant to subsection (b)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (b)(2) varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the court shall apply the respective common level ratio to the corresponding market value of the property.

(c.1) When a county has effected a countywide revision of the assessment which was used to develop the common level ratio last determined by the State Tax Equalization Board, the following shall apply:

courts of common pleas over appeals from the determinations of county tax assessment boards.[11]  Therefore, the relief

(1) If a county changes its assessment base by applying a change in predetermined ratio, the court shall apply the percentage change between the existing predetermined ratio and newly established predetermined ratio to the county's common level ratio to establish the certified revised common level ratio for the year in which the assessment was revised.

(2) If the county performs a countywide revision of assessments by revaluing the properties and applying an established predetermined ratio, the court shall utilize the established predetermined ratio instead of the common level ratio for the year in which the assessment was revised and until such time as the common level ratio determined by the State Tax Equalization Board reflects the revaluing of properties resulting from the revision of assessments.

(d) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.

(e) The costs of the appeal and hearing are to be apportioned or paid, as the court may direct: Provided, however, That the appeal shall not prevent the collection of taxes based on the assessment complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same: And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from to the tax collector under protest in writing, in which case when the tax is paid over to the taxing district, it shall be the duty of the tax collector to notify the taxing district of such payment under protest by delivering to it the protest in writing.  Whereupon, the taxing district shall be required to segregate twenty-five per centum of the amount of the tax paid over, and shall deposit the same in a separate account in the depository in which the funds of the taxing district are deposited, and shall not be permitted to expend any portion of such segregated amount unless it shall first petition the court, alleging that such segregated amount is unjustly withheld.  Thereupon, the court shall have power to order the use by the taxing district of such portion of such segregated amount as shall appear to said court to be reasonably free from dispute, and the remainder of the segregated amount shall be held segregated by the taxing district,

pending the final disposition of the appeal: Provided further, That upon final disposition of the appeal, the amount found to be due the appellant as a refund shall also be a legal set-off or credit against any future taxes assessed against the appellant by the same taxing district, and where a taxing district alleges that it is unable to thus credit all of such refund in one year, the court, upon application of either party, shall determine over what period of time such refund shall be made, and shall fix the amount thereof which shall be credited in any year or years.  This proviso shall be construed to apply to all refunds that are now due or may hereafter become due as the result of appeals from assessments that have not been finally determined or adjusted at the time this act takes effect, regardless whether there has been a payment of any moneys into court or to the tax collector under written protest.

(f) If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.  The board shall hold its hearings and make its final determination of the subsequent years in question in the same manner as for the year or years for which the original appeal was filed.  This provision shall be applicable to all pending appeals as well as future appeals.

The provisions of Section 704 of the repealed Assessment Law are now found in Section 8854 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8854.

11.  *See Wellsboro Area School District v. Tioga County Board for the Assessment & Revision of Taxes,* 651 A.2d 592, 594 (Pa.Cmwlth.1994) (Upon an appeal of a decision by a county tax assessment board, the trial court had authority to conduct a trial *de novo* pursuant to Section 704(a) of the Assessment Law, 72 P.S. § 5453.704(a), to determine whether real property owned by a school district was exempt from taxation under Sections 202(a)(4)

sought comes, if at all, as a matter of right. Thus, a hearing by a court of common pleas on such an appeal must be one within the contemplation of the statute.

The assessment appeal fee at issue herein was established by the Snyder County Board of Commissioners at a public meeting, wherein the Commissioners approved a general fee schedule, which included a fee for the processing of tax assessment appeals.[12] A review of the Assessment Law reveals that the statute does not authorize the Board or the trial court to determine whether an assessment appeal fee established by the municipality's governing body is lawful. The Assessment Law limits both the Board and the trial court to determining whether a property's tax assessment is proper and in accordance with the law. *See* Sections 702 and 704 of the Assessment Law, 72 P.S. §§ 5453.702, 5453.704.

Accordingly, the trial court in this matter was limited to determining whether the Property at issue herein was subject to a tax assessment pursuant to Section 201(a.1) of the Assessment Law. As such, the trial court lacked jurisdiction to determine whether the $75 assessment appeal fee authorized and imposed by the Snyder County Board of Commissioners is lawful.

The trial court's order in this matter is affirmed with respect to the court's determination that the Property is subject to taxation pursuant to Section 201(a.1) of the Assessment Law and vacated with respect to the court's determination that the appeal fee imposed by the Snyder County Board of Commissioners is lawful.

### *ORDER*

AND NOW, this 13th day of October, 2011, the order of the Court of Common Pleas of the Seventeenth Judicial District, Snyder County Branch entered in the above-captioned matter is affirmed in part and vacated in part in accordance with the foregoing opinion.

and (7), 72 P.S. § 202(a)(4), (7), based on a review of the evidence submitted at the hearing before the board.).

12. We note that Section 304 of the now repealed Assessment Law provides that "[t]he county commissioners shall appropriate annually to the [assessment] board such funds as may be necessary for the payment of salaries, wages and other expenses incurred in carrying out the duties imposed upon the board and its employes" by the Assessment Law. 72 P.S. § 5453.304. This same provision can now be found in Section 8851(c) of the Consolidated County Assessment Code, 53 Pa. C.S. § 8851(c).