590 A.2d 1382

**HANLEY AND BIRD, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**EASTERN KENTUCKY PRODUCTION COMPANY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 31, 1990.

Decided May 8, 1991.

564

Ronald M. Katzman, for petitioners.

John J. Butchar, Deputy Atty. Gen., for respondent.

Daniel P. Delaney, Harrisburg, for amicus curiae, Pennsylvania Natural Gas Ass'n.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

McGINLEY, Judge.

At No. 3481 C.D.1985, Hanley and Bird (H & B), a general partnership, appeals from an order of the Board of Finance and Revenue (Board) dated December 18, 1984, refusing a petition for refund of the Utilities Gross Receipts Tax (Tax) for 1982.[1] At No. 938 C.D.1988, Eastern Kentucky Production Company (Eastern) appeals from an order of the Board dated March 30, 1988, refusing a petition for review with respect to resettlement of the Tax for the year ended December 31, 1985.

H & B and Eastern (collectively Petitioners), entered into a stipulation of facts with the Commonwealth of Pennsylvania (Commonwealth). H & B is "engaged in the business of producing and selling natural gas" to three customers, Brackway, Inc., Penn Tech Paper, Inc. and Hanley Brick, Inc. H & B and the Commonwealth's Stipulation of Facts (H & B's S.F.) July 19, 1990, No. 2 at 1. H & B is not a public utility. H & B's S.F. No. 11 and Decision of Administrative Law Judge, March 13, 1980. H & B has paid the Tax since 1959.[2] On April 15, 1983, H & B timely filed a Utilities Gross Receipts Tax Report indicating tax was due in the amount of $637,915.14 for the year ending December 31, 1982. On November 20, 1983, the Department of Revenue, with the approval of the Auditor General, settled H & B's tax liability in the amount of $637,915.14. On April 9, 1985, H & B filed a petition for refund alleging that it was not subject to the Tax because it is not a public utility. H & B filed an amended petition on April 15, 1985.[3] On December 18, 1985, the Board denied H & B's petition.

1. Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

2. H & B relied upon an opinion expressed in a letter sent by corporate counsel to the Vice–President and the Controller of the North Penn Gas Company, a public utility, concerning North Penn Gas Company's tax liability resulting from certain sales pursuant to the gross receipts tax. H & B's S.F. 13 and the December 3, 1959, Letter, Exhibit "B." A copy of this letter was sent to H & B and as a result H & B assumed it was subject to the Tax. *See* H & B's Brief at 5.

3. H & B alleged in its amended petition that the imposition of the Tax on companies that are not public utilities violates due process, the

Eastern, incorporated under the laws of the state of Kentucky, is an independent producer of natural gas and oil. Eastern's Stipulation of Facts, July 19, 1990, (Eastern's S.F.) Nos. 1 and 8 at 1, 3. Eastern also is not a public utility. Eastern's S.F. No. 18. Eastern produces gas from wells in Pennsylvania and sells it to several Pennsylvania industrial buyers who take delivery at the wellhead.[4] Eastern's S.F. Nos. 10, 11. "Eastern did not own or control the pipelines through which any of the gas sold was transported." Eastern's S.F. No. 16.

On December 17, 1986, the Department of Revenue assessed Eastern in the amount of $333,714.00 for the 1985 year. On January 5, 1987, this assessment was approved by the Auditor General. On April 8, 1987, Eastern filed a petition for resettlement of the tax assessment and a hearing was held. The Department of Revenue reduced the assessment and resettled Eastern's tax liability in the amount of $4,385.00 based upon the natural gas produced and sold by Eastern in Pennsylvania during 1985. Eastern filed a petition for review of the resettlement. On April 1, 1988, the Board denied the petition and determined "that as a gas company the Petitioner [Eastern] is subject to the Gross Receipts Tax imposed under Article XI of the Tax Reform Code ... [t]he fact that the Article may be labeled as Utilities Gross Receipts Tax is not determinative in accordance with the Statutory Construction Act found at 1 Pa.C.S.A. § 1924." Order of the Board of Finance and Revenue, March 30, 1988.

On appeal Petitioners argue that the Tax applies only to public utilities and not to independent natural gas producers. Specifically, Petitioners argue that the legislature

uniformity of taxation and equal protection under the Pennsylvania Constitution, and the United States Constitution. Petitioners have not raised or briefed these constitutional issues on appeal.

4. "All transportation was arranged by the buyer from the points of sale and transfer of title, and the gas went through various pipelines before ultimately reaching the anticipated points of consumption." Eastern's S.F. No. 12. Eastern had no involvement or participation in those arrangements.

intended to impose the Tax only on public utilities, that such an intent is clear from the explicit words of the taxing statute. Alternatively, if it is determined that the taxing statute is ambiguous, the applicable principles of statutory construction compel a finding that the Petitioners are not subject to the Tax. It is the Commonwealth's position that the Tax is a tax imposed on gas companies and other entities doing business in Pennsylvania regardless of whether they are public utilities.

The Tax is set forth in Article XI of the Tax Reform Code of 1971. Section 1101(a) of the Tax Reform Code of 1971 relevantly provides:

(a) General Rule.—Every railroad company, pipeline company, conduit company, steamboat company, canal company, slack water navigation company, transportation company, and every other company, association, joint-stock association, or limited partnership, and every telephone company, telegraph company, express company, *gas company*, palace car company and sleeping car company, now or hereafter incorporated or organized by or under any law of this Commonwealth, ... and doing business in this Commonwealth, and every limited partnership, association, joint-stock association, copartnership, person or persons, engaged in telephone, telegraph, express, *gas*, palace car or sleeping car business in this Commonwealth, shall pay to the State Treasurer, through the Department of Revenue, a tax of forty-four mills upon each dollar of the gross receipts of the corporation, company or association, limited partnership, joint-stock association, copartnership, person or persons, received ... from the sales of *gas*, except gross receipts derived from sales to any municipality owned or operated public utility and except gross receipts derived from the sales for resale, to persons, partnerships, associations, corporations or political subdivisions subject to the tax imposed by this act upon gross receipts derived from such resale and from the transportation of oil done wholly within this State. The gross receipts of *gas companies* shall include

the gross receipts from the sale of artificial and natural gas, but shall not include gross receipts from the sale of liquefied petroleum gas. (Emphasis added.)

72 P.S. § 8101(a).

Initially, Petitioners argue that the entities enumerated in Sections 1101(a) and (b)[5] of the Tax Reform Code of 1971 are public service or public utility companies. They argue that this interpretation of Sections 1101(a) and (b) is supported by the explicit words of the statute; the subsequent amendment to Article XI which resulted in the enactment of Section 1101(h) of the Tax Reform Code of 1971;[6] and the characterization of the tax by a number of publications.[7] They also argue that the term "State tax surcharge" as used and applied in Section 1101(h) of the Tax Reform Code of 1971 is indicative that the Tax is only applicable to public utilities. Petitioners maintain they perform a function quite different than a public utility gas company which provides a gas service to the general public, whereas Petitioners, as independent gas producers and suppliers, sell gas to a limited number of industrial customers.

Prior to the enactment of Section 1101(a) of the Tax Reform Code of 1971, Section 23 of the Act of June 1, 1889, P.L. 420 provided for a tax of eight mills upon the dollar imposed on the gross receipts of companies, corporations, associations, limited partnerships and firms doing business

**5.** Section 1101(b) of the Tax Reform Code of 1971 imposes "a tax of forty-four mills upon each dollar of gross receipts" upon electric, light, waterpower and hydro-electric utilities. 72 P.S. § 8101(b).

**6.** Section 1101(h) provides:
   (h) Benefits to Consumer.—For purposes of the article, the reduction in the taxes imposed under subsections (a) and (b) shall derive to the benefit of the consumer purchasing services from said utilities. Said benefit shall be provided in the form of a reduction in the State tax surcharge. Failure to pass through the reduction to the consumer shall subject the public utility to a civil penalty of at least one thousand dollars ($1,000), but not more than five thousand dollars ($5,000), and such additional relief as the court may deem appropriate.
72 P.S. § 8101(h).

**7.** Petitioners cite to a number of publications describing the Tax as a tax imposed on public utilities. *See* H & B's S.F., Exhibits D–J.

in the state of Pennsylvania. The Act of June 1, 1889, has been amended through the years, adding and deleting companies subject to the imposition of the Tax. In 1959 gas companies were included and made subject to the Tax.[8] Presently, Section 1101(a) of the Tax Reform Code of 1971 states that a "gas company ... doing business in this Commonwealth" and "every limited partnership, association, joint-stock association, co-partnership person or persons ... engaged in ... gas ... business" is subject to the Tax on receipts from the sale of gas.

Article XI is entitled the "Utilities Gross Receipts Tax." However, the term "public utility" only appears in Section 1101(a) of the Tax Reform Code of 1971 once, in reference to a "municipality owned or operated public utility." 72 P.S. § 8101(a). Petitioners argue that neither the term "utility" nor the term "public utility" is defined in the statute. Petitioners argue that "utility" is defined as a "[p]ublic [u]tility"[9] and that a "public utility" is defined as "[a] company that offers a governmentally regulated public service."[10] Petitioners maintain that because they do not sell gas to the general public they are not public utilities. Essentially, Petitioners suggest the appropriate test regarding the applicability of Section 1101(a) of the Tax Reform Code of 1971 is whether the customer is a member of the general public. We disagree.

Section 1101(a) of the Tax Reform Code of 1971 identifies taxpayers by the *function* they perform, without regard to whether they are a public utility. Section 1101(a) clearly states that a tax is imposed on every gas company organized or incorporated in Pennsylvania, another state, the United States or any foreign government engaged in the sale of artificial and natural gas in Pennsylvania. The functions and activities of the Petitioners fall within the purview of the Act, Petitioners sell gas in Pennsylvania. Any interpretation that Section 1101(a) of the Tax Reform

8. Act of November 21, 1959, P.L. 1553.

9. Webster's Third International Dictionary 2525 (3d ed. 1961).

10. Webster's II New Riverside Dictionary 757 (1984).

Code of 1971 applies only to public utilities must be rejected.

In 1987, by amendment, the legislature reduced the rate of the Tax on the gross receipts imposed on all taxpayers listed in Sections 1101(a) and (b) of the Tax Reform Code of 1971 from forty-five mills to "forty-four mills upon each dollar of the gross receipts." 72 P.S. §§ 8101(a) and 8101(b). The 1987 amendment also added Section 1101(h) to the Tax Reform Code of 1971, which directed that the reduction in tax millage be passed on to the consumer "in the form of a reduction in the state tax surcharge," to reflect the reduction in the millage. Failure to comply with Section 1101(h) results in "a civil penalty of at least ... ($1,000), but no more than ... ($5,000), and such additional relief as the court may deem appropriate." 72 P.S. § 8101(h). Section 1101(h) applies to public utilities. Because Petitioners are not public utilities, their tax liabilities were reduced without the requirement that they pass the reduction on to their customers. However, nothing in the 1987 amendment directs that the Tax on gross receipts is to be imposed only on public utilities and the language imposing the Tax on gas companies in subsection (a) remains unchanged.

Further, the publications relied upon by Petitioners to establish that the Tax is a tax on gross receipts imposed only on public utilities are not exhaustive treatises. In fact, one of the cited publications entitled Pennsylvania Taxation states the contrary:

As it appears in the Tax Reform Code, the tax is labeled a tax on utilities. However, the label is misleading. As discussed in § 5.110, taxpayers under the act, generally speaking are identified by function, not by whether they are utilities according to any definition, much less whether they are public utilities. Thus, it is possible that a taxpayer may not be a public utility for purposes of the Public Utility Code or that a PUC public utility may not be subject to the tax. The statute itself does not use the words *utility or public utility*, except with respect to

certain restrictions on the taxation of municipality-owned and operated entities, discussed in § 5.112.

*Joseph C. Bright, Jr.,* Pennsylvania Taxation, Section 5.100 at 5–3. (Emphasis in original).

Petitioners are, respectively, a partnership and a corporation engaged in the sale of gas and their gross sales are properly subject to the Tax.

Petitioners next argue that the most "conclusive interpretation of a statute is to be garnered from that given to it by the courts of the state." *Turner v. May Corporation,* 285 Pa.Superior Ct. 241, 252, 427 A.2d 203, 208 (1981). Petitioners argue that the courts of this Commonwealth have interpreted the Tax as applying only to public utilities. In support of this position Petitioners cite *Philadelphia v. Smith,* 412 Pa. 262, 194 A.2d 177 (1963); *Philadelphia v. Depuy,* 431 Pa. 276, 244 A.2d 741 (1968); *American Telegraph and Telephone Co. v. Board of Property Assessment, Appeals and Review of Allegheny County,* 461 Pa. 716, 337 A.2d 844 (1975); and *Heller v. Depuy,* 2 Pa.Commonwealth Ct. 196, 277 A.2d 849 (1971).[11]

A review of the cited cases reveals that each is distinguishable from the circumstances presented in the present controversy. In the cases relied upon by Petitioners the parties were either public utilities, or a different Act than the one now under scrutiny was involved. *See Smith* (the Appellant Philadelphia Gas Works was a public utility, owned and operated by the City of Philadelphia); *American Telegraph and Telephone Co.,* (AT & T, a public utility, appealed a decision of the Allegheny County Board of Property Assessment which had assessed AT & T's real estate despite AT & T's payment of tax pursuant to the Public Utility Realty Tax Act); and *Heller* (an action filed in this Court's original jurisdiction in which plaintiffs, Frank E. Heller and the Williamsport Municipal Water Authority, had sought to restrain the tax revenue officials of the Commonwealth from enforcing the provisions of the Public

---

**11.** Petitioners also cite *City of Philadelphia v. Dougherty,* 77 Dauphin 158 (1961).

Utility Realty Tax Act). In the past, the courts of this Commonwealth have not exempted an entity listed in the Act on the basis that the entity was not a public utility. This Court will not do so now.

Lastly, Petitioners argue that the statute is ambiguous and upon a proper application of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, they are not subject to the Tax. Petitioners argue that the courts, in accordance with 1 Pa.C.S. § 1921(a),[12] have held that the title and the preamble in a statute must be considered in its interpretation. Petitioners maintain that the relevant tax section is entitled "Article XI Utilities Gross Receipts Tax" and that subsequent amendments to the statute depict a tax on gross receipts of the utility companies or gross receipts of utilities.

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," 1 Pa.C.S. § 1921(b). There is no ambiguity in the language of Section 1101(a) of the Tax Reform Code of 1971. Section 1101(a) states that a gas company engaged in the business of producing and selling gas is subject to the Tax. A statute must be given its plain and obvious meaning where the words are clear and unambiguous. *Wilderness Industries of Maryland, Inc. v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen,* 58 Pa.Commonwealth Ct. 127, 427 A.2d 1235 (1981). "Although titles and preambles are accepted aids in resolving ambiguity in an enacting clause [of a statute], they may not be used to create ambiguity where none exists...." *Barasch v. Pennsylvania Public Utility Commission,* 516 Pa. 142, 157–158, 532 A.2d 325, 332 (1987).

12. 1 Pa.C.S. § 1921(a) provides:
   The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

█ It is clear from a review of Section 1101(a) of the Tax Reform Code of 1971 that although "utility" is used in the title it is not controlling and the imposition of the tax applies to all of the enumerated entities. We also recognize that the construction of a statute by those charged with administering it is entitled to great weight. *Pennsylvania Liquor Control Board v. Burrell Food Systems, Inc.*, 97 Pa.Commonwealth Ct. 101, 508 A.2d 1308 (1986).

Accordingly, we affirm the decision of the Board.

## ORDER

AND NOW, this 8th day of May, 1991, the orders of the Board of Revenue and Finance, dated December 18, 1985, and March 30, 1988, are affirmed.

Unless Exceptions are filed within thirty (30) days of the date of this Order, the above Order shall become final, and judgment is entered in favor of the Commonwealth of Pennsylvania.

BYER, Judge, dissenting.

I cannot agree with the majority that the "Utilities Gross Receipts Tax" under Article XI of the Tax Reform Code of 1971, as amended, 72 P.S. §§ 8101–8103 (supp. 1990), applies to "gas companies" which are not public utilities.

Based upon the full context of the statutory language at issue and the common and approved usage of that language, I believe the statute must be interpreted as applying only to public utilities. My conclusion is bolstered by the legislative history persuasively presented by amicus Pennsylvania Natural Gas Association (amicus brief, 30–55).

Under the majority's rationale, the "Utilities Gross Receipts Tax" may be imposed on private businesses which produce, sell or distribute such gases as freon for use as a coolant, nitrous oxide for use by dentists, oxygen for use in medical applications, propane for cooking or helium for balloons. This is not what the legislature intended.

Therefore, I respectfully dissent.