**SOLAR TURBINES INCORPORATED, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**Solar Turbines Incorporated, Petitioner,**

v.

**Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Feb. 4, 2003.

As Amended March 4, 2003.

William T. Hawke, Harrisburg, for petitioner.

John J. Butchar, Harrisburg, for respondent.

Before FRIEDMAN, J., COHN, J., and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

Solar Turbines Incorporated (Solar) petitions for review of the orders of the Board of Finance and Revenue, dated January 24, 2001, which sustained the Department of Revenue's determinations that Solar is not entitled to refunds of Utilities Gross Receipts Tax (Tax)[1] payments for the years 1997 and 1998. We affirm.

For purposes of this appeal, Solar and the Commonwealth entered into a stipulation of facts, (Solar's Brief, Ex. A), which are summarized as follows. Solar, a wholly-owned subsidiary of Caterpillar, Inc. (Caterpillar), is a world-wide designer and manufacturer of gas turbine engines. Solar owns and operates its only electricity generation project in the Township of Springettsbury, York County, Pennsylvania. The electricity generation project was undertaken at the direction of Caterpillar's board of directors in order to provide Caterpillar with inexpensive and reliable electricity for use at its York manufacturing plant and distribution center. The facility is known as the "Caterpillar–York Project" and has a design capacity of approximately sixty-nine megawatts. The electricity generated by Solar is sold to Caterpillar at cost. Since the inception of the project in 1989, Solar has reported the sales to Caterpillar as taxable gross receipts.[2]

Solar petitioned for resettlement or refund of Tax payments made in 1989 through 1992, asserting that the Tax applies only to public utilities. The total amount at issue was approximately $1.3 million. In 1994, the parties entered into a compromise settlement, and Solar was granted $450,000.00 in Tax relief. As part of the settlement, Solar agreed that, in future years, it would forego asserting that it is not subject to the Tax, absent a statutory change, change in policy, change in material facts or the favorable and final resolution of a claim by another taxpayer on the same issue.

Following the passage of the Electricity Generation Customer Choice and Competition Act (Competition Act),[3] which Solar asserts is the requisite statutory change, Solar filed petitions with the Board of Appeals (BOA) for refund of the Tax paid for years 1997 and 1998 ($284,841.00 and $158,683.00, respectively). After a hearing, the BOA denied both petitions, and the Board of Finance and Revenue denied Solar's petitions for review. Solar then filed two petitions for review with this court, which were consolidated.

On appeal to this court,[4] Solar first argues that the Tax imposed under section 1101(b) of the Tax Code applies only to public utilities and not to private producers of electricity.

---

1. The Tax is imposed pursuant to section 1101(b) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 8101(b).

2. Solar has sold excess electricity at wholesale to Metropolitan Edison. Solar's wholesale sales to Metropolitan Edison are exempt from the Tax; Metropolitan Edison pays the Tax on the gross receipts from sales to its customers.

3. 66 Pa.C.S. §§ 2801–2812, effective January 1, 1997.

4. In appeals from decisions of the Board of Finance and Revenue, our scope of review is broad, because this court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Eat'n Park Restaurants Business Trust v. Commonwealth*, 803 A.2d 845 (Pa.Cmwlth.2002).

In pertinent part, section 1101(b) of the Tax Code states as follows:

**(b) Electric Light, Waterpower and Hydro-electric Utilities.**—*Every electric light company,* waterpower company and hydro-electric company now or hereafter incorporated or organized by or under any law of this Commonwealth ... and every limited partnership, association, joint-stock association, copartnership, person or persons, *engaged in electric light and power business,* waterpower business and hydro-electric business in this Commonwealth, shall pay to the State Treasurer, through the Department of Revenue, a tax of forty-four mills upon each dollar of the gross receipts of the corporation, company or association, limited partnership, joint-stock association, copartnership, person or persons, received from:

(1) *the sales of electric energy* within this State, except gross receipts derived from the sales for resale of electric energy. . . .

72 P.S. § 8101(b) (emphasis added). The statute does not define the terms "electric light company" and "electric light and power business."

Solar asserts that historic and common usage of the terms "electric light company" and "electric light and power business" indicate that these terms refer specifically to public utilities. In support of this contention, Solar discusses the development of the electricity industry in the United States and cites the use of the combined words "electric light" in the names of public utility companies and public utility industry publications.

Alternatively, Solar contends that the less common, modern usage of "electric light company" to mean a manufacturer or retailer of electric light fixtures, creates ambiguity as to the meaning of the term and requires application of the rules of statutory construction for proper interpretation. Solar maintains that the language used in the statute, including the title, reflects that the legislature intended the Tax to apply only to public utilities. (See, e.g., section 1101(g) of the Tax Code, 72 Pa.C.S. § 8101(g), which refers to determinations of gross receipts by the Public Utility Commission.) Solar also notes that the terms "electric light company," "waterpower company" and "hydro-electric company," as used in section 1101(b) of the Tax Code, are now deemed to include two new business entities, "electric distribution companies" and "electric generation suppliers," pursuant to section 2810(i) of the Competition Act. 66 Pa.C.S. § 2810(i). Solar contends that the Legislature would not have recognized a need to specifically include these two new entities within the definition of "electric light company" unless it had previously considered "electric light company" to have a narrow definition, i.e., to refer to a public utility. Solar also relies on a fundamental maxim of statutory construction, "expresio unius est exclusio alterius," to argue that the inclusion of the two new entities evidences a legislative intent to exclude others.

In response to Solar's arguments, the Commonwealth relies on *Hanley and Bird v. Commonwealth,* 139 Pa.Cmwlth. 563, 590 A.2d 1382 (1991) (en banc), in which this court held that section 1101(a) of the Tax Code, 72 P.S. § 8101(a), applies to entities other than public utilities. The petitioners in *Hanley and Bird,* natural gas producers and sellers, asserted that the Tax did not apply to independent natural gas producers. At that time, section 1101(a) of the Tax Code stated in relevant part as follows:

(a) General Rule—Every railroad company, pipeline company, conduit company ... gas company ... doing business in this Commonwealth, and ev-

ery limited partnership, ... person or persons, engaged in. telephone, telegraph, express, gas, palace car or sleeping car business ... shall pay ... a tax ... upon each dollar of the gross receipts of the corporation ... received ... from the sales of gas, except gross receipts derived from ... sales for resale....

72 P.S. § 8101(a).[5]

The petitioners in *Hanley and Bird* proffered arguments that were substantially similar to those raised by Solar in this case. Specifically, the petitioners argued that the Legislature intended to impose the Tax only on public utilities. The petitioners relied upon specific statutory language; they cited publications that described the Tax as a tax imposed on public utilities; and, alternatively, they argued that the statute was ambiguous.

The court in *Hanley and Bird* held that section 1101(a) of the Tax Code was unambiguous and that imposition of the Tax applied to all of the enumerated entities. The court stated:

Section 1101(a) of the [Tax Code] identifies taxpayers by the *function* they perform, without regard to whether they are a public utility. Section 1101(a) clearly states that a tax is imposed on every gas company organized or incorporated in Pennsylvania.... The functions and activities of the Petitioners fall within the purview of the Act, Petitioners sell gas in Pennsylvania. Any interpretation that Section 1101(a) of the

[Tax Code] applies only to public utilities must be rejected.

*Id.* at 1386 (emphasis in original).[6]

We conclude that section 1101(b) of the Tax Code also is unambiguous. By its plain language, section 1101(b) expressly imposes the Tax upon *all entities* that are "engaged in electric light and power business" and receive revenue from "the sale of electric energy."

■ Having determined that the Tax applies to all such entities, we must reject Solar's alternative arguments that it is exempt from the Tax because the sale of electricity represents only a *de minimis* portion of its business operation and/or because Solar makes no profit on the supply of electricity to its parent company. Section 1101(b) of the Tax Code applies to "every ... [entity] engaged in electric light and power business" and imposes a tax upon "each dollar of the gross receipts ... received." The provision contains no exceptions based on quantity of sales or profit. For the same reason, we also reject Solar's contention that the supply of electricity to its parent corporation at cost is not a "sale," subject to the Tax.

Accordingly, we affirm.

### ORDER

AND NOW, this 4th day of February, 2003, unless exceptions are filed within thirty (30) days, the orders of the Board of

---

5. As amended in 1991, section 8101(a) no longer imposes the Tax on those engaged in the gas business.

6. The court's analysis in *Hanley and Bird* included a quote from a publication cited by the petitioners, entitled *Pennsylvania Taxation:*

As it appears in the Tax Reform Code, the [Tax] is labeled a tax on utilities. However,

the label is misleading. As discussed in § 5.110, taxpayers under the act, generally speaking are identified by function, not by whether they are utilities according to any definition, much less whether they are public utilities.

*Id.* at 1386 (quoting Joseph C. Bright, Jr., *Pennsylvania Taxation*, Section 5.100 at 5–3).

Finance and Revenue, dated January 24, 2001, are affirmed.