# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Electric Power Service   :
Corporation,   :
          Petitioner   :
  :
      v.   :   No. 861 F.R. 2013
  :   Submitted: November 15, 2017
Commonwealth of Pennsylvania,   :
         Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: March 15, 2018

      Before the Court are exceptions filed by American Electric Power Service Corporation (Taxpayer)[1] to an opinion and order of a three-judge panel of this Court dated May 4, 2017, which affirmed the Board of Finance and Revenue (Board). *See American Electric Power Service Corporation v. Commonwealth*, 160 A.3d 950 (Pa. Cmwlth. 2017) (*American Electric Power I*). In doing so, the panel held that Taxpayer's sale of electricity to the Letterkenny Industrial Development

---

[1] Taxpayer files its exceptions pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), which states:

> Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect, for the purposes of Rule 1701(b)(3) (authority of lower court or agency after appeal) of an order expressly granting reconsideration of the determination previously entered by the court. Issues not raised on exceptions are waived and cannot be raised on appeal.

PA. R.A.P. 1571(i).

Authority (LIDA) is subject to the gross receipts tax set forth in Section 1101(b) of the Tax Reform Code of 1971 (Tax Code),[2] 72 P.S. §8101(b), and not eligible for the tax exemption set forth in Section 1101(b)(1) of the Tax Code. We agree and, thus, overrule Taxpayer's exceptions.

Taxpayer, a New York corporation headquartered in Columbus, Ohio, sells electricity in Pennsylvania on a wholesale basis. It does not provide electricity to end-user customers and is not subject to the jurisdiction of the Pennsylvania Public Utility Commission (PUC). As a wholesale seller of electricity, Taxpayer is regulated solely by the Federal Energy Regulatory Commission.

LIDA was formed in 1997 by Franklin County under Pennsylvania's Economic Development Financing Law[3] after the closure of the Letterkenny Army Depot. Governed by a 15-member board of directors appointed by the Franklin County Commissioners, LIDA assumed control of the Army Depot's electrical distribution system (EDS), which serves the Cumberland Valley Business Park (Business Park) and an industrial area retained by the Army. Stipulation of Facts Nos. 6, 8. In 2009, LIDA began to purchase electricity from Taxpayer for sale to the Army and customers in the Business Park. LIDA contracts with Allegheny Power, a Pennsylvania electric utility, to operate and maintain the EDS and bill LIDA's customers.

Taxpayer filed a gross receipts tax report for 2010 that showed gross receipts in the amount of $5,804,219.77 from its sale of electricity to LIDA and $640,705.90 from its sale to the Borough of Pitcairn (Pitcairn). Stipulation of Facts No. 9. Taxpayer claimed that these gross receipts were non-taxable under Section

---

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-10004.

[3] Act of August 23, 1967, P.L. 251, *as amended*, 73 P.S. §§371-386, retitled the Economic Development Financing Law by Section 1 of the Act of December 17, 1993, P.L. 490.

1101(b)(1) of the Tax Code because they were derived from the sale of electricity for resale. Neither LIDA nor Pitcairn filed, reported, or paid gross receipts tax on the electric energy each purchased from Taxpayer in 2010.[4] The Department of Revenue (Department) rejected Taxpayer's claim of an exemption and increased Taxpayer's gross receipts tax liability for 2010 from $0 to $380,546.[5] Stipulation of Facts No. 13. Taxpayer appealed to the Department's Board of Appeals, and it denied relief.

Taxpayer then appealed to the Board of Finance and Revenue. The Board concluded that Taxpayer's sales to Pitcairn should have been exempt because Pitcairn is a municipality. The Board held otherwise for LIDA, which is not a political subdivision and did not pay a gross receipts tax. The Board reduced Taxpayer's total gross receipts tax liability to $342,744. Taxpayer petitioned for this Court's review. On May 4, 2017, a three-judge panel affirmed the Board's order.[6] Taxpayer timely filed the exceptions presently before this Court.[7]

Taxpayer raises three issues for our consideration. It first argues that it is not subject to the gross receipts tax under Section 1101(b) of the Tax Code.

---

[4] LIDA and Pitcairn also did not file corporate net income tax returns or capital stock tax returns for 2010.

[5] Taxpayer's total taxable gross receipts for 2010 was $6,449,926. Stipulation of Facts ¶13.

[6] In addition, this Court vacated the portion of the Board's order regarding penalties. That portion of the Board's order is not at issue here. *See American Electric Power I*, 160 A.3d 950.

[7] In tax appeals from the Board of Finance and Revenue, this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration. *Consolidated Rail Corp. v. Commonwealth*, 679 A.2d 303, 304 (Pa. Cmwlth. 1996). This Court reviews *de novo* the determinations of the Board. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). "Stipulations of fact are binding upon both the parties and the Court." *Id*. "However, this Court may draw its own legal conclusions." *Id*. "Our scope of review in tax appeals is … limited to the construction, interpretation and application of a State tax statute to a given set of facts." *United Services Automobile Association v. Commonwealth*, 618 A.2d 1155, 1156 (Pa. Cmwlth. 1992) (quoting *Escofil v. Commonwealth*, 406 A.2d 850, 852 (Pa. 1979)).

3

Alternatively, Taxpayer argues its gross receipts from the sales of electricity to LIDA are tax exempt under Section 1101(b)(1) of the Tax Code. Finally, Taxpayer argues that this Court improperly extended the Commonwealth's deadline to respond to Taxpayer's requests for admissions. Because the Commonwealth did not timely respond, it must be deemed to have admitted that Taxpayer is not subject to the gross receipts tax.

In its first issue, Taxpayer argues that it is not subject to the gross receipts tax set forth in Section 1101(b). Section 1101 imposes a gross receipts tax on several categories of business. Section 1101(b)(1) is the category relevant here, and it states:

> (b) *Electric Light, Waterpower and Hydro-electric Utilities.-- Every electric light company*, waterpower company and hydro-electric company now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government and doing business in this Commonwealth, *and every limited partnership, association, joint-stock association, copartnership, person or persons, engaged in electric light and power business*, waterpower business and hydro-electric business in this Commonwealth, *shall pay* to the State Treasurer, through the Department of Revenue, *a tax of forty-four mills upon each dollar of the gross receipts of the corporation*, company or association, limited partnership, joint-stock association, copartnership, person or persons, received from:
>
> > (1) the sales of electric energy within this State, *except gross receipts derived from the sales for resale of electric energy* to persons, partnerships, associations, corporations or political subdivisions subject to the tax imposed by this subsection upon gross receipts derived from such resale[.]

4

72 P.S. §8101(b)(1) (emphasis added).  Taxpayer argues that because it is an interstate wholesaler of electricity regulated by the Federal Energy Regulatory Commission and not a utility, it is not subject to the gross receipts tax.  However, even if it were a utility regulated by the PUC, it is entitled to the tax exemption in subsection (1).

In support of its construction of Section 1101(b), Taxpayer directs our attention to Pennsylvania's Electricity Generation Customer Choice and Competition Act (Competition Act).[8]  The Competition Act defines an "*electric distribution company*" as a "*public utility* providing facilities for the jurisdictional transmission and distribution of electricity to retail customers…." 66 Pa. C.S. §2803 (emphasis added).  Taxpayer argues that it is not a "public utility."  Likewise, it is not an "electric light company" or "a person or persons engaged in the electric light and power business" within the meaning of Section 1101(b).

In *American Electric Power I*, the panel noted that the Tax Code does not define the terms "electric light company" or an "electric light and power business."  However, Section 2810(i) of the Competition Act illuminates their meaning.  It states that an "electric light company … as used in [S]ection 1101(b) of the [Tax Code] shall be deemed to *include* electric distribution companies and electric generation suppliers."  66 Pa. C.S. §2810(i) (emphasis added).[9]  Section 2810(j) of the Competition Act further provides:

---

[8] 66 Pa. C.S. §§2801-2815.

[9] The Competition Act defines "electric generation supplier" as follows:

> *A person or corporation*, including municipal corporations which choose to provide service outside their municipal limits except to the extent provided prior to the effective date of this chapter, brokers and marketers, aggregators or any other entities, *that sells to end-use customers electricity or related services utilizing the jurisdictional transmission or distribution facilities of an electric distribution company* or that purchases, brokers, arranges or markets electricity or related

Retail sales of electric generation, transmission, distribution or supply of electric energy, dispatching services, customer services, competitive transition charges, intangible transition charges and universal service and energy conservation charges and such other retail sales in this Commonwealth the receipts of which, if bundled, would have been deemed to be sales of electric energy prior to the effective date of this chapter shall be deemed sales of electric energy for purposes of section 1101 of the Tax Reform Code of 1971. *The phrases "doing business in this Commonwealth" and "engaged in electric light and power business,* waterpower business and hydroelectric business in this Commonwealth," *as such terms are used in section 1101(b) of the Tax Reform Code of 1971 and in this chapter, shall be construed to include the direct or indirect engaging in, transacting or conducting of activity in this Commonwealth for the purpose of establishing or maintaining a market for the sales of electric energy and include obtaining a license or certification from the commission to supply electric energy.* Retail sales of generation shall be deemed to occur at the meter of the retail consumer.

66 Pa. C.S. §2810(j) (emphasis added).

In *American Electric Power I*, the panel reasoned as follows. Section 1101(b) of the Tax Code imposes the gross receipts tax upon "every" entity that is "engaged in electric light and power business." 72 P.S. §8101(b). Section 2810(j) of the Competition Act states that being "engaged in [an] electric light and power business" includes "the *direct or indirect* engaging in, transacting or conducting of activity in this Commonwealth for the purpose of establishing or maintaining a market for the sales of electric energy[.]" 66 Pa. C.S. §2810(j) (emphasis added). Reading the two statutes together, the panel concluded that the gross receipts tax

---

services for sale to end-use customers utilizing the jurisdictional transmission and distribution facilities of an electric distribution company….

66 Pa. C.S. §2803 (emphasis added).

must be paid on all sales of electric energy, including Taxpayer's wholesale sales to its customers.

The panel also rejected Taxpayer's argument that because it is not a licensed utility regulated by the PUC, it cannot be engaged in the electric light and power business. This Court had previously considered, and rejected, a similar argument in *Solar Turbines Inc. v. Commonwealth*, 816 A.2d 362 (Pa. Cmwlth. 2003). In that case, an electricity generation project operator challenged its liability for the gross receipts tax on the theory that "electric light company" and "electric light and power business," as used in Section 1101(b) of the Tax Code, refer only to public utilities. We reasoned that the Tax Code "identifies taxpayers by the *function* they perform, without regard to whether they are a public utility." *Solar Turbines Inc.*, 816 A.2d at 365 (emphasis in original) (citing *Hanley and Bird v. Commonwealth*, 590 A.2d 1382, 1386 (Pa. Cmwlth. 1991)).[10]  "By its plain

---

[10] In *Hanley and Bird*, 590 A.2d 1382, this Court held that former Section 1101(a) of the Tax Code, 72 P.S. §8101(a), applies to entities other than public utilities, notwithstanding the presence of "Utilities" in the title of Section 1101(b). In that case, the petitioners, natural gas producers and sellers, appealed the Board's denial of their petition for refund of the gross receipts tax. The petitioners asserted that the legislature intended to impose the tax only on public utilities, which did not include independent natural gas producers, based on the explicit words of the Tax Code. Article XI of the Tax Code was entitled the "Utilities Gross Receipts Tax." Section 1101(a) of the Tax Code stated in relevant part as follows:

> (a) General Rule – Every railroad company, pipeline company, conduit company … *gas company* … doing business in this Commonwealth, and every limited partnership, … person or persons, engaged in telephone, telegraph, express, *gas*, palace car or sleeping car business … shall pay … a tax … upon each dollar of the gross receipts of the corporation … received … from the sales of gas, except gross receipts derived from … sales for resale….

*Hanley and Bird*, 590 A.2d at 1384-85 (citing former 72 P.S. §8101(a), as amended in 1991, Section 1101(a) no longer imposes the gross receipts tax on those engaged in the gas business) (emphasis added).

Rejecting the petitioners' arguments, this Court held that Section 1101(a) of the Tax Code identifies taxpayers by the function they perform, without regard to whether they are a public

7

language, [S]ection 1101(b) expressly imposes the [gross receipts tax] upon *all entities* that are 'engaged in electric light and power business' and receive revenue from 'the sale of electric energy.'" *Solar Turbines, Inc.*, 816 A.2d at 365 (quoting 72 P.S. §8101(b)). Stated otherwise, the fact that Taxpayer is not licensed by the PUC as a public utility is not determinative of whether it is engaged in the electric light business within the meaning of Section 1101(b) of the Tax Code.

In *American Electric Power I*, the panel further observed that, in the Competition Act, the General Assembly adopted the revenue-neutral reconciliation (RNR) formula to recoup any losses caused by the restructuring of the electric industry so that "the Commonwealth could collect the same level of revenue that was collected prior to the passage of the Competition Act." *American Electric Power I*, 160 A.3d at 955 (quoting *Spectrum Arena Limited Partnership v. Commonwealth*, 983 A.2d 641, 646 (Pa. 2009)); *see also* 66 Pa. C.S. §2810(a). Prior to deregulation, the services Taxpayer now provides to its customers could have been provided only by public utilities. Exempting Taxpayer from gross receipts tax

---

utility. In support, this Court quoted from a publication cited by the petitioners, entitled *Pennsylvania Taxation*:

> As it appears in the Tax Reform Code, the tax is labeled a tax on utilities. However, the label is misleading. As discussed in §5.110, taxpayers under the act, generally speaking are identified by function, not by whether they are utilities according to any definition, much less whether they are public utilities….

*Hanley and Bird*, 590 A.2d at 1386 (quoting Joseph C. Bright, Jr., *Pennsylvania Taxation*, Section 5.100 at 5-3). The *Hanley and Bird* court held that there is no ambiguity in the language of Section 1101(a) of the Tax Code. "Although titles and preambles are accepted aids in resolving ambiguity in an enacting clause [of a statute], they may not be used to create ambiguity where none exists[.]" *Hanley and Bird*, 590 A.2d at 1387 (quoting *Barasch v. Pennsylvania Public Utility Commission*, 532 A.2d 325, 332 (Pa. 1987)). "It is clear from a review of Section 1101(a) of the [Tax Code] that although 'utility' is used in the title it is not controlling and the imposition of the tax applies to all of the enumerated entities." *Id.* at 1387.

liability on its sales to LIDA would render meaningless the RNR formula set forth in the Competition Act.

We discern no error in the panel's analysis in *American Electric Power I*. Accordingly, we hold that Taxpayer is subject to the gross receipts tax by reason of Section 1101(b) of the Tax Code.

In the alternative, Taxpayer argues that if it is subject to the gross receipts tax, its sales of electricity to LIDA are exempt from the tax under Section 1101(b)(1) of the Tax Code. Acknowledging that LIDA is a "public instrumentality of the Commonwealth," Taxpayer Brief at 15 n.2, Taxpayer maintains that LIDA acts in a private capacity when reselling electricity to its customers. In that regard, LIDA is akin to a private corporation or a municipality acting "in a private corporate function[;]" therefore, LIDA must pay the gross receipts tax on its resale of electricity. Taxpayer Brief at 15. The fact that LIDA did not report or pay gross receipts tax does not shift LIDA's tax liability to Taxpayer.

Section 1101(b)(1) of the Tax Code specifies that the tax must be paid on gross receipts received from

> the sales of electric energy within this State, *except gross receipts derived from the sales for resale of electric energy to persons, partnerships, associations, corporations or political subdivisions*[11] *subject to the tax imposed by this subsection* upon gross receipts derived from such resale[.]

---

[11] Section 1101(f) of the Tax Code further provides:

> Application to Municipalities.--This article shall be construed to apply to municipalities, and to impose a tax upon the gross receipts derived from any municipality owned or operated public utility or from any public utility service furnished by any municipality, except that gross receipts shall be exempt from the tax, to the extent that such gross receipts are derived from business done inside the limits of the municipality, owning or operating the public utility or furnishing the public utility service.

72 P.S. §8101(b)(1) (emphasis added). In other words, for Taxpayer to qualify for the resale exemption in Section 1101(b)(1), LIDA must be a person, partnership, association, corporation, or political subdivision that is itself subject to the gross receipts tax on receipts derived from its resale of the electricity it purchases from Taxpayer.

We reject Taxpayer's premise that LIDA is a "corporation" within the meaning of Section 1101(b)(1) of the Tax Code. LIDA, which was formed by Franklin County under the Economic Development Financing Law, is "a public instrumentality of the Commonwealth and a public body corporate and politic[.]" Section 6(a) of the Economic Development Financing Law, 73 P.S. §376(a). A public instrumentality is created "for the purpose of acquiring, holding, constructing, improving, maintaining, owning, financing and leasing … projects." *Id*. Accordingly, it is granted "all powers necessary or convenient for the carrying out of the aforesaid purposes," such as acquiring property and making contracts. 73 P.S. §376(b). LIDA's authorization under the statute to acquire property and enter into contracts does not transform it into a private corporation.

In *American Electric Power I*, the panel also held that LIDA is not a political subdivision subject to the gross receipts tax under Section 1101(b)(1) of the Tax Code. Section 1991 of the Statutory Construction Act defines a political subdivision as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district." 1 Pa. C.S. §1991. LIDA does not fall within that definition. As the panel explained, while development authorities owe their existence to various units of government, they "are not considered to be part of the political subdivisions that created them."

---

72 P.S. §8101(f).

*American Electric Power I*, 160 A.3d at 958. Rather, an authority such as LIDA is "a separate and distinct entity from the entity that created it, and its function is to carry out the purpose set forth in its enabling act." *Id.*

In short, Taxpayer has failed to demonstrate that LIDA is one of the listed entities eligible for the resale exemption in Section 1101(b)(1) of the Tax Code. In so determining, we are mindful of the general proposition that "claims for exemption from taxation are to be strictly construed." *Commonwealth v. Erie Metropolitan Transit Authority*, 281 A.2d 882, 884 (Pa. 1971).

We discern no error in the panel's holding in *American Electric Power I* that Taxpayer, not LIDA, has the obligation to pay the gross receipts tax.

Finally, Taxpayer argues that this Court improperly extended the Commonwealth's deadline to respond to Taxpayer's requests for admissions, which requested an admission that Taxpayer is not subject to the gross receipts tax. Taxpayer contends that the Commonwealth's untimely response requires us to treat that fact admitted by the Commonwealth. We disagree. It is well settled that a conclusion of law does not fall within the permissible scope of a request for admission under Pennsylvania Rule of Civil Procedure No. 4014.[12] *Dwight v.*

---

[12] Rule 4014 provides, in pertinent part:

> (a) A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rules 4003.1 through 4003.5 inclusive set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivery, mailing or receipt of any document described in the request….
>
> (b) Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission an answer….

Pa. R.C.P. No. 4014(a), (b).

*Girard Medical Center*, 623 A.2d 913, 916 (Pa. Cmwlth. 1993) ("requests for admissions must call for matters of fact rather than legal opinions and conclusions."). Taxpayer's argument lacks merit.

Having reconsidered our previous opinion and reviewed Taxpayer's exceptions, we reaffirm the holding and the reasoning of this Court's opinion in *American Electric Power I*. Accordingly, we overrule Taxpayer's exceptions.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Electric Power Service    :
Corporation,    :
           Petitioner    :
   :
         v.    :    No. 861 F.R. 2013
   :
Commonwealth of Pennsylvania,    :
         Respondent    :

## **O R D E R**

AND NOW, this 15th day of March, 2018, American Electric Power Service Corporation's exceptions to this Court's May 4, 2017 opinion and order are OVERRULED, and the Chief Clerk is directed to enter judgment in the Commonwealth of Pennsylvania's favor.

_____
MARY HANNAH LEAVITT, President Judge