IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends Boarding Home of Western     :
Quarterly Meeting,     :
    :
                Petitioner     :
    :
       v.     : No. 332 F.R. 2018
    : Submitted: March 9, 2022
Commonwealth of Pennsylvania,     :
    :
                Respondent     :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED: August 3, 2022

Before the Court *en banc* are the exceptions (Exceptions) filed by Friends Boarding Home of Western Quarterly Meeting (Friends) to a three-judge panel Opinion and Order affirming the order of the Commonwealth of Pennsylvania (Commonwealth), Board of Finance and Revenue (F&R) that denied Friends' Application for Sales Tax Exemption (Application).[1] *See Friends Boarding Home*

---

[1] Friends filed their Exceptions pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), which states:

**(Footnote continued on next page…)**

*of Western Quarterly Meeting v. Commonwealth*, 260 A.3d 1064 (Pa. Cmwlth. 2021) (*Friends Boarding Home*). Specifically, the panel concluded that Friends did not meet the constitutional test to qualify as an institution of purely public charity under *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306 (Pa. 1985) (*HUP*). *Friends Boarding Home*, 260 A.3d at 1075. Friends argues that the panel erred by: making factual conclusions unsupported by or contradictory to the parties' stipulations of facts;[2] neglecting to consider that Friends incurs operating deficits; and improperly equating Friends with senior care facilities charging exorbitant entry fees. Friends maintains that the evidence supports a determination that it has met all constitutional and statutory standards to qualify as an institution of purely public charity. Upon review, we overrule the Exceptions and reaffirm *Friends Boarding Home*.

## I. Background

A full recitation of the underlying facts, as stipulated to by the parties, may be found in *Friends Boarding Home*. For our present analysis, we briefly summarize that, in March 2017, Friends filed an Application with the Department

---

Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect, for the purposes of Rule 1701(b)(3) (authority of lower court or agency after appeal) of an order expressly granting reconsideration of the determination previously entered by the court. Issues not raised on exceptions are waived and cannot be raised on appeal.

Pa. R.A.P. 1571(i).

[2] The parties filed a Stipulation of Facts and a Supplemental Stipulation of Facts. The Supplemental Stipulation of Facts contained two stipulations pertaining to 2019.

of Revenue (Department) seeking an exemption from the Commonwealth's sales and use tax as an institution of purely public charity. According to the parties' stipulations, Friends is a nonprofit corporation doing business as Friends Home, a senior living community located in Kennett Square, Chester County. Stipulation of Facts (S.F.), 11/17/20, Nos. 1-3, 5.

Friends provided rate schedules for years 2012 through 2019. Friends subsidizes its rates. Friends also attempts to set its rates lower than other institutions in the surrounding area but sufficient to meet its operating budget. According to the 2014-2018 Directories of Licensed Personal Care Boarding Homes (Directories) in Chester County, which was secured from the Chester County Department of Aging Services and includes rates charged by similar facilities, three facilities charge less than Friends; nine facilities charge more. S.F. Nos. 15-26, Exhibit Nos. 12-23.

Friends offers financial assistance to some of its residents, providing on average approximately $82,500 per year to nine residents, which represents 15% of its resident population. Friends provides financial support to those in need after they have paid the full fare for two years, and then, only $2,000 per month, which maxes out after $40,000 or 20 months. Friends deferred two applications because the requesting residents did not meet the requisite standard for financial assistance. Between 2016 and 2020, a total of seven residents left the facility because they lacked funds. Friends does not accept Medicaid or any other government assistance. S.F. Nos. 31-40, Exhibit Nos. 24-25; Supplemental Stipulation of Facts (S.S.F), 4/27/21, Nos. 1-2.

On May 26, 2017, the Department denied Friends' Application upon determining that Friends does not donate or render gratuitously a substantial portion of its services. Friends timely appealed to the Department's Board of Appeals

3

(BOA), which similarly denied the appeal upon concluding that Friends did not meet the "community service requirement" under the Institutions of Purely Public Charity Act (Charity Act).[3]  Friends timely appealed to F&R, which again concluded that Friends was not exempt on the basis of the statutory "community service requirement" under the Charity Act.  F&R determined that Friends satisfied the other statutory criteria for exemption, but it never addressed the constitutional qualifications.  *See id.*  Friends then petitioned this Court for review.

In *Friends Boarding Home*, although the panel determined that F&R's analysis was flawed in its application of the statutory and constitutional tests, the panel affirmed upon determining that Friends failed to meet the second and third prongs of the constitutional test known as the *HUP* test.[4]  *Friends Boarding Home*, 260 A.3d at 1074-76.  Specifically, the panel determined that Friends did not prove

---

[3] Act of November 26, 1997, P.L. 508, *as amended*, 10 P.S. §§371-385.

[4] To satisfy the constitutional requirements for a "purely public charity," an institution must satisfy the five-part "*HUP* test," which requires that an institution possess the following characteristics:

> (a) Advances a charitable purpose;
>
> (b) Donates or renders gratuitously a substantial portion of its services;
>
> (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;
>
> (d) Relieves the government of some of its burden; and
>
> (e) Operates entirely free from private profit motive.

*HUP*, 487 A.2d at 1317.  After meeting the *HUP* test's constitutional qualifications, an institution must also satisfy the corresponding statutory elements set forth in Section 5 of the Charity Act, 10 P.S. §375.

4

that it donates or renders gratuitously a substantial portion of its services under the *HUP* test. *Id.* at 1074. The panel found that, based on the parties' stipulations, Friends' fees are comparable to rates charged by its for-profit competitors; Friends may decline admission or request a resident to leave if he or she cannot afford to pay; Friends only provides financial support to those in need after they have paid the full fare for two years, and then, only $2,000 per month, which maxes out after $40,000 or 20 months; Friends financially assisted less than 15% of its population; and Friends does not accept Medicaid. *Id.*

With regard to the third prong, the panel determined that Friends does not benefit an indefinite class of persons who are legitimate subjects of charity. *Friends Boarding Home*, 260 A.3d at 1075. The panel explained that Friends only admits individuals who can initially afford its services with the use of personally available financial resources. *Id.* Once admitted, Friends continues to care for the resident only if he or she can afford services with limited financial assistance for a limited duration. Further, Friends excludes Medicaid recipients. *Id.* Having determined that Friends failed to meet the second and third prongs of the *HUP* test, the panel did not address the remaining constitutional or statutory factors. *Id.* Friends' Exceptions now follow.[5]

---

[5] As this Court has stated:

> In tax appeals from the [F&R], this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration. [*Consolidated Rail Corp.*] v. *Commonwealth*, 679 A.2d 303, 304 (Pa. Cmwlth. 1996). This Court reviews *de novo* the determinations of the [F&R]. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). "Stipulations of fact are binding upon both the parties and the Court." *Id.* "However, this Court may draw its own legal conclusions." *Id.* "Our scope of review in tax appeals is . . . limited

**(Footnote continued on next page…)**

5

## II. Exceptions

Friends asserts that the panel erred by: (1) finding that Friends charges rates comparable to rates charged by its for-profit competitors; (2) finding that only 15% of Friends' residents receive financial assistance; (3) ignoring the impact of operating deficits; and (4) improperly equating Friends' facility with senior care facilities charging exorbitant entry fees. Friends otherwise maintains that it has met all remaining constitutional and statutory standards to qualify as an institution of purely public charity.

## III. Discussion
### A. Comparable Rates

First, Friends maintains that this Court erred in *Friends Boarding Home*, in finding that Friends charges between $3,000-$5,665 per month and that such rates are comparable to rates charged by its for-profit competitors of $2,090-$4,715 per month. *Friends Boarding Home*, 260 A.3d at 1075. According to the parties' stipulations and exhibits attached thereto, Friends maintains that it charges rates that are significantly lower than many competing facilities. *See* S.F. Exhibit Nos. 19-23. Thus, Friends maintains that the panel's finding of comparability is not supported by the evidence and is contrary to the parties' stipulations.

The parties agreed to Friends' rate schedules for the years 2012-2019 and attached them as exhibits to their stipulations. S.F. Nos. 12-21. According to

---

to the construction, interpretation and application of a State tax statute to a given set of facts." *United Services Automobile Association v. Commonwealth*, . . . 618 A.2d 1155, 1156 ([Pa. Cmwlth.] 1992) (quoting *Escofil v. Commonwealth*, . . . 406 A.2d 850, 852 ([Pa. Cmwlth.] 1979)).

*American Electric Power Service Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth. 2018).

6

the rate schedules, Friends charged $3,002 to $5,665 for supportive independent living residency, depending on year and size of unit. S.F. Nos. 17-20. The parties also agreed to the 2014-2018 Directories for Chester County, which include data on rates charged by similar facilities. S.F. Nos. 25-30, Exhibit Nos. 19-23. According to these Directories, for-profit homes charged comparable rates, and some of them charged less than Friends. *Id.* For example, (i) during the period 2014 to 2018, Colonial Woods charged its residents $2,300 to $3,100 per month, plus $100 per day for respite care; (ii) during the period 2014 to 2016, Devon Manor charged its residents a monthly fee of $2,847 to $3,717; (iii) during the period 2014 to 2017, Golden Living Community charged its residents a monthly fee of $2,090 to $3,714; and (iv) during the period 2014 to 2018, Harrison Senior Living of Coatesville charged its residents a monthly fee of $2,000 to $4,715, plus level of care. S.F. Nos. 25-30, Exhibit Nos. 19-23. While some facilities charged significantly more than Friends, including Remed, which charged its residents between $12,000 to $39,000 per month, the Court did not stray from the parties' stipulations or otherwise err in determining that Friends' rates were comparable to those charged by its for-profit competitors. The rate comparison was drawn from the parties' stipulations and exhibits. Therefore, we find no error in this Court's conclusions regarding the comparability of rates.

### B. Financial Assistance

Next, Friends maintains that the panel erred in determining that only 15% of its residents received financial assistance. Friends asserts that this overlooks the fact that Friends offers substantial subsidies to reduce rates for all of its residents. According to Friends, because all rates are subsidized, all residents benefit by some financial support, not just the 15% who receive direct financial assistance. Those

7

subsidized rates do not permit Friends to recover the cost of providing care to the residents.

Friends' argument in this regard fails because of the comparability of rates. As discussed above, according to the parties' stipulations and exhibits attached thereto, Friends charges rates comparable to its for-profit competitors. The record contains no explanation for the rate similarities. Friends' argument that it is charging below-average rates and thereby providing meaningful financial assistance to all residents in the form of substantial subsidization is belied by the fact that other for-profit facilities charge comparable rates.

As stipulated to by the parties, Friends provides direct financial assistance to approximately 15% of its population, but only after those residents financially qualified for admission and paid for two years without any financial support. S.F. Nos. 31-40, Exhibit Nos. 24-25; S.S.F. Nos. 1-2. The amount of financial assistance, when provided, does not exceed $2,000 per month, with a maximum cap of $40,000. S.F. Exhibit Nos. 24-25. If a resident cannot afford to pay, Friends may either decline admission or require the resident to leave. S.F. Nos. 32, 26, 39, 40, Exhibit Nos. 24-25. Upon review, the Court did not err in determining that only 15% of Friends' residents receive direct financial assistance, which is limited in scope and amount, and that this level of assistance does not meet the test that Friends donates or renders gratuitously a substantial portion of its services. *Friends Boarding Home*, 260 A.3d at 1074.

### C. Operating Deficits

Next, Friends contends that the panel ignored its operating deficits in determining it did not meet the *HUP* test. Between 2014 and 2017, Friends incurred annual operating losses between $386,620-$542,652. In 2018, Friends had an

operating deficit of $265,569 and for 2019, $790,069. Friends maintains that these deficits lend additional support that Friends' rates contain substantial subsidies that benefit all residents, such that it satisfied the requirement that it donates or renders gratuitously a substantial portion of its services.

We recognize that Friends incurs operating deficits that it covers with funds generated from investments and contributions. However, Friends' argument that its operating deficits prove that it donates a substantial portion of its services by subsidizing all rates is once again refuted by the fact that there are for-profit facilities in the vicinity of Friends Home providing similar services at comparable rates. Even though Friends may incur operating deficits, it has not demonstrated that it donates "a substantial portion of its services" "to those who cannot afford the 'usual fee.'" *HUP*, 487 A.2d at 1315 n.9. Thus, we discern no error in the conclusion reached in *Friends Boarding Home* in this regard.

**D. Indefinite Class of Persons Who Are Legitimate Subjects of Charity**

In addition, Friends contends that the panel erred in determining that Friends does not benefit a substantial and indefinite class of persons who are legitimate subjects of charity. The elderly is a substantial and indefinite class of persons who are legitimate subjects of charity. Friends benefits the elderly by providing services to them at below-average rates, without charging a hefty entrance fee, and by providing additional financial assistance to some residents. Friends contends that the panel's decision is based on factual errors regarding the comparability of rates charged and its flawed comparison to facilities in *In re Appeal of Dunwoody Village*, 52 A.3d 408 (Pa. Cmwlth. 2012), and *Menno Haven, Inc. v. Franklin County Board of Assessment and Revision of Taxes*, 919 A.2d 333

9

(Pa. Cmwlth. 2007), which charged exorbitant entry fees and created significant barriers to entry for seniors.

In *Friends Boarding Home*, the Court observed that, when compared to the facilities in *Dunwoody Village* and *Menno Haven*, "Friends charges a moderate entrance fee of $4,000." *Friends Boarding Home*, 260 A.3d at 1073. Nevertheless, the comparison to *Dunwoody Village* and *Menno Haven* was apt in that

> Friends only admits individuals who can afford its services with the use of personally available financial resources. Once admitted, Friends continues to care for a resident only if he or she can afford services with the limited financial assistance Friends provides, at its discretion, to a relatively small percentage of its population. Friends also excludes Medicaid recipients from its facility.

*Id.* at 17. When these factors are considered, Friends assists a finite – not an indefinite – class of subjects of charity. After review, this Court discerns no error in the conclusion reached in *Friends Boarding Home*.

## E. Remaining Constitutional & Statutory Standards

Lastly, Friends asserts that F&R properly concluded that Friends met all other criteria governing tax exempt status. F&R does not dispute that the other constitutional and statutory criteria, except for the statutory community service requirement, were met.

Having denied the foregoing Exceptions, we decline to review the other factors for tax exemption. Even assuming that Friends would meet all other criteria, our result would not change. To qualify for exemption, a taxpayer must meet *all* criteria under the constitution and statute. *Friends Boarding Home*, 260 A.3d at 1070; *Dunwoody Village*, 52 A.3d at 413 n.4.

10

## IV. Conclusion

For the foregoing reasons, we discern no error in our prior decision, and, therefore, we overrule Friends' Exceptions to *Friends Boarding Home*.

 

_____

MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends Boarding Home of Western
Quarterly Meeting,

                    Petitioner

          v.

Commonwealth of Pennsylvania,

                    Respondent

:
:
:
:
:
:
: No. 332 F.R. 2018
:
:
:
:
:

## **O R D E R**

AND NOW, this 3rd day of August, 2022, the Exceptions filed by Petitioner Friends Boarding Home of Western Quarterly Meeting to this Court's opinion in *Friends Boarding Home of Western Quarterly Meeting v. Commonwealth*, 260 A.3d 1064 (Pa. Cmwlth. 2021), are OVERRULED, and the Prothonotary is directed to enter judgment in favor of Respondent Commonwealth of Pennsylvania.

_____
MICHAEL H. WOJCIK, Judge